FILED
MAR - 9 2015
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

# Untied States District Court

## Northern District of California

**02-27-2015**

**Complaint**

**Augustus M. Brown II**
**609 West 12th. Street**
**Antioch, California 94509**
**Email: brown_augustusiii@yahoo.om**
**Telephone 1-925-301-3180 cell**
**1-925-732-9005 home**

**Gategourmet/DBA/Gate Gourmet, Ins.**
**645 West Field Road**
**San Francisco, Ca 94128**
**Gate Gourmet/DBA/Gate Gourmet, NA Ins.**
**CEO: Andrew Gibson**
**1880 Campus Commons; Reston, Va. 20191**

---

**Plaintiff,**

**To be Amended**

**Augustus M. Brown II**

CV 15 1072 JCS

**Versus,**

**Defendants,**

**Gate Gourmet, dba, Gategourmet**

**Defendants,**

**Delores Mejia (Manager Operations); Earnest Little (Operations Storeroom),**
**Daniel Moreno (Unit Recruiter Human Recourses); Brett Appleberg (Human Resources Director),**
**Adolfo Clavo, (Manager Operations Transportation,**

---

**Type of Case:**

**Jury Trial demanded:**

**Violations of rights under American with disability Act, 42 US Code §12112, Fraudulent conveyances, Back Wages, Falsely impersonation of Union Representatives, Title VII Discrimination, Job Harassments, Deformation, filing false internal personnel reports, Negligent representation, violation of Title 8, Back unpaid wages for Labor USCS Title 42, Malice**

---

**Plaintiff Augustus Monroe Brown II** now presents this case and persons of the **Gategourmet Co.** before the United States District Court, seeking a fair and impartial trial by jury who, after having heard the case facts will graciously deem disclosure of such information as, sufficient cause to award the plaintiff

appropriate compensation against the aforementioned **Gategourmet Co.** and it's employees, some of whom hold positions of authority over the plaintiff. Furthermore plaintiff alleges that certain **Gategourmet employees** to be named did, in their dealings with him, deliberately break and/or violate the rules, orders and statutes of common states – and federal laws. Here now are some facts. **I Augustus Brown II** began working for Gategourmet on or about March 19, 2014, and my immediate supervisor was a woman named **Delores Mejia**- a manager in the dish department. Fairly early on with, **Gategourmet Co. HR,** told me that after my 90 day probationary work period I was free to transfer to another department. My choice was to transportation. After becoming aware of my request for a transfer, **Delores Mejia-** who I believe is of Spanish or Latin descent- -dent told me on or about June 23, 2014, and said she did not feel I'd be able to work safely or approached perform well overall in this department. Her reasoning? She believed that my "bad" right eye would make me a danger to other co-workers in this section, due to the height location of the equipment I'd be using. Seeking a second opinion, I went and discussed the matter with **Daniel "Danny" Moreno ( Unit Recruiter in human resources.)** He assured me that my request for a transfer would be honored , since I'd missed just 3 days during that 3 month probationary period. But after hearing( and apparently believing ) a lie that **Delores Mejia** told him about me( she claimed without proof that I'd threatened her), **Danny Moreno** – who may also be of Spanish or Latin heritage- now decides that HE also won't allow me to transfer from Delores Mejia's section so I could work in transportation. Understandably, I expressed to Delores Mejia that I believe her actions and attitude towards me to be unjust and unfair, because a person's visual appearance ( the eye), does not

necessarily hinder work performance. And, I pointed out that my right eye has never prevented me from working competently on past jobs, such as operating railroad cars, working at a nuclear power plant( 2 safety first jobs ), or even working for Universal Studios, just to name another former employer. Incredibly, Delores Mejia's response to what I'd said to her, was that she was going to inform the human resources dept. that I had again( supposedly) threatened her. My response? I told her that her fabricated accusations and untrue filed reports against me had stressed me out. After hearing this, **Delores Mejia** arranges a meeting between myself and the transportation **manager, Adolfo Clavo (a Peruvian.)** As we talked, **Adolfo Clavo** informed me that **Delores Mejia** had instructed him **NOT** to allow me into his section, because I had a "bad attitude". Ironically, about a week earlier **Adolfo** had said he'd be **GDLA** to have me in the transportation department- as soon as Delores Mejia released me from working in her section.

Even as OTHER employees were being effected by her malicious attitude, the animus **Delores Mejia** had **ESPECIALLY** towards me continued to manifest itself. For example, I recall a situation where a work related illness forced me to be absent( in this instance) for a total of 4 days. Now 2 of those work days were my normal off days. While off, I visited my doctor who, after examining me determined that my sickness was caused by some type of bacterial inhalation at work, which resulted in flu-like symptoms. He gave me a note conveying that I could return to work (without restrictions ) after a 4 day recuperation period. Not surprisingly upon returning to work, **Delores Mejia** resumed harassing me- and she was not alone in doing so. While she and **Daniel "Danny" Moreno of Human Resources** accepted the doctor's slip I'd brought explaining why I'd missed the 2 regular work days beyond my 2 off days, she and he

simultaneously together conspired to (yes), block my transferring from her department. I should point out that the sickness which gripped me could easily be traced back to unsanitary areas at work. Sewage backing up in the kitchens, dish room, restrooms, and the like had been a health and safety issue even before my arrival. Making matters worse, **Delores Mejia** forced the cooks and food prep staff to continue working under these conditions. Additionally, she attempted to make employees transport the garbage carts thru the food preparation areas- the same food that would be consumed by the various airline passengers. Her directives and attitude seem to show an abuse of power and mis-treatment of those under her influence. That said, it's highly probable that **Gategourmet Co.** was aware of this and other work-related problems effecting workers, especially since I'd talked to various persons at work about Delores' overall treatment of certain employees, including me. Sadly **Gategourmet Co.** instead chose to ignore what was happening. No wonder I got sick, received medication from my doctor, and was advised by him to stay home for a few extra days. Even so the constant duress I felt in having to deal with this woman was about to increase. Commuting to work on public transportation has been a hardship because I live so far from work. So when **Delores Mejia** decided that of August 10, 2014 I should start working on weekends, I was forced to make drastic changes in getting to work on time. For awhile I rented a vehicle to drive, but then that got too expensive. Ultimately I had to sleep overnight on chairs at SFO ( yes San Francisco Airport) because gotten me to work on time the weekend buses running in my neighborhood would not have. The unpleasantness of working under **Delores Mejia**, her ongoing refusal to let me transfer into a different department( I'd already satisfied the 90 day probationary wait) such as the galley or transportation

sections, which pat $11.60 hourly, plus offered workers overtime ( unlike the $9.44 per hour I was making with no overtime, working 4-day 10 hour shifts), had left me stressed out, worn down, depressed and without energy. These ailments compelled my doctor to recommend I take a 2-week rest period from work. 7 of those days were actual work days, but I needed the time off. Also troubling me was the news that **Delores Mejia** allowed newly hired Hispanics with less seniority than myself (others) to work overtime weekly - but prohibited me and other blacks from doing the same. For (1) day, August 22, 2014, upon returning to work my day went without incident. But the next day (August 22, 2014), the game playing resumed, as **Delores Mejia** awaited me in my work area as I arrived for the 9am shift. As I expected, she wanted proof excusing my work absence. I gave her (2) doctor's slips, both which medically validated my illness leave for the consecutive dates of August 8-11, 15-18, and the 22nd of 2014. But rather than simply accept the doctor endorsed notes, **Delores** tried to confuse me, by attempting to charge me with "she could only charge me for those 7 consecutive" days missed. In turn I had to explain to her that scheduled days I forfeited during this particular absence. Seemingly angry at my reply, **Delores Mejia** asked me onto the office of African American **Chris Wright**- a unit manager director. Once there she wasted no time with a lying claim to Chris Wright that I had "threatened" her. Yet she couldn't describe the nature of the threat. Feeling tense myself, I told **Chris Wright** that **Delores,** just now, and in the past has shown constant animosity towards me. And I said I was stepping out of his office to find a Union Representative. Amazingly (or maybe not), **Delores Mejia,** still visibly displeased with me ordered me to not look for a Union Rep.( intimidation and harassment tactics.) Yet, she called upon an Asian worker known as Richard and instructed him to masquerade as a union representative. Attempting to do so, **Richard** himself assured me that he was indeed a union rep, and that he would deliver the union agreement

between the union & Gategourmet. But in **Delores Mejia's** presence **Richard** "slipped up" and said that he was only a lead employee- and not a union representative. Hearing this I said to both **Delores Mejia** and **Chris Wright,** that they had illegally breached the Union Agreement that allowed employees to have fair representation. Mockingly, **Chris Wright** said that I was playing "Johnnie Cochran", then told me to leave his office, but to return to human resources on Thursday August 28, 2014 with a doctor's note clearing me to return to work without restrictions. But I could not get an appointment with the doctor before Friday August 29, 2014. I have just given you a slightly elaborate account of my work interaction with **Gategourmet supervisor Delores Mejia** specifically. But the revelations here don't began to tell the full story. Though other groups(ethnicities) are targeted, **Gategourmet** has feigned fairness on the job towards African Americans by reporting to the Government, that they hired black employees, say such persons couldn't do the required work during the probationary period, and, were consequently fired. Part of their "end game setup" is to place blacks under **Delores Mejia's** supervision where, like myself, they are subject to her biased attacks, denied promotional opportunities, and forced to languish in stagnation. Also hidden behind this sordid situation is the fact that many Asian workers, some longstanding in tenure, are paid low wages, go years without a raise, yet like other employees pay union dues, even while "power" brokers like **Delores Mejia** are allowed to randomly appoint fraudulent "union representatives" in the absence of real employee representation. My own experiences at **Gategourmet,** and of those co-workers with whom I've talked to indicate an abusive, "master/servant" work culture - not unlike a plantation. And, as the "Master in Charge", Gategourmet Co. should be held accountable for creating a workplace that leaves many of it's employees wanting to work elsewhere. That is bad business.

## Violations of the Law,

## (1). First Cause: (ADA), American with disability Act, 42 US Code §12112

When the plaintiff was hired the agreement was made with the company **(Gategourmet)** that after his 90 day probation period was completed he would be eligible to bid to go into the **Transportation Department** automatically, where he would then earn approximately $13.23 per hour in wages as to this was the policy of all internal transfers. **Delores Mejia** became aware of Mr. Brown's request for transfer into the Transportation Department and it was then that **Delores Mejia** did state to the plaintiff on or about **June 23, 2014** that she did not fill that the plaintiff would work safely or fair well in the transportation department, because the plaintiff has a bad right eye and he would be a danger in working with other employees and because the equipment that they **(Transportation Department)** uses are too high and unsafe for the Plaintiff.

The right eye accusation and absence from work due to the sewage sickness was only used by **Delores Mejia** as justification not to transfer plaintiff into the Transportation Department of which the plaintiff do believe that this also violate his rights under the **(ADA)**.

### 1. Violations of rights under (ADA), American with disability Act, 42 US Code §12112

**(A). General rule:** No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

**(1). Construction:** limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such appli cant or employee;

**(A).** not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or (1) assuming a false identity with the intent to defraud another; (2) pretending to be as in: Price Waterhouse v. Hopkins :: 490 U.S. 228 (1989)

**(2). Second Cause: Fraudulent conveyances, 18 USC § Chapter 47**

the plaintiff claims that the company, its manager's and supervisor's used various forms of deliberate deceptions, along with unfair fraudulent practices against the aforementioned plaintiff and other co-workers.

**These are the facts:**

**(1).** At hiring, the company promised the plaintiff promotions into other Departments without harassment,

**(2).** The Company typically forces all new employee into a Union that poorly represents employees best interests. Furthermore, there are no actual Union Reps, or union representation in the workplace. And, this pseudo-practice of non union representation is a violation of **18 USC § Chapter 47** of which states:

Fraud must be proved by showing that the defendant's action's involved five (5) separate elements as follows :

**(1).** A false statement of a material fact.

**(2).** Knowledge on the part of the defendant that the statement is untrue.

**(3).** Intent on the part of the defendant to deceive the alleged victim(s).

**(4).** Justifiable reliance by the alleged victim on the statement.

**(5).** Injuring to the alleged victim as a result.

**18 USC §1038 False information and hoaxes:** whoever engages in any conduct with intent to convey false circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of **chapter 2, 10, 11b, 39, 40, 44, 111, 113b**. same as in **37 Am Jur. 2d, (focus and definition)** as unfair dealing; malfeasance, a positive act resulting from a willful intent to deceive; in artifice by which a person is deceived or hurt; a willful, malevolent act, directed to perpetrating a wrong to the rights of others, anything which is calculated to deceive, whether it is a single act or a combination of circumstances, or acts or words which amount to a suppression of the truth, or mere silence;

**(3). Third Cause: impersonation of Union Representatives, 5 USCS code § 7114**

The plaintiff rights to union representation were violated when a discussion of his rights needed to be ex exercised while in **Chris Wright's (Unit Director Manager)**office until he could locate a **Union Representative**, but **Delores Mejia** ordered the plaintiff not to look for his **Union Representative**, and then as she called **(Asian)** worker known by the name of **(Richard)** and <u>instructed him to masquerade himself as a Union Representative</u> this violated the plaintiff rights under **5 USCS code § 7114 as it states:**

(1) A labor organization which has been accorded exclusive recognition is the exclusive representative of the employees in the unit it represents and is entitled to act for, and negotiate collective bargaining agreements covering, all employees in the unit. An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and

without regard to labor organization membership.

**(2)** An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at: **(A)** any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment; or

**(B).** any examination of an employee in the unit by a representative of the agency in connection with an investigation if:

**(i)** the employee reasonably believes that the examination may result in disciplinary action against the employee; and **(ii)** the employee requests representation.

**(A)** any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment; or

**(B)** any examination of an employee in the unit by a representative of the agency in connection with an investigation if: **(i)** the employee reasonably believes that the examination may result in disciple-nary action against the employee; and **(ii)** the employee requests representation.

**(3)** Each agency shall annually inform its employees of their rights under paragraph (2)(B) of this subsection.

## (4). Fourth Cause: **Job Harassments, 42 USCS §2000e-2; 37 Am Jur 2d §208**

The following information is a brief description of how **Delores Mejia** has harassed the plaintiff and other black male and female coworkers. One of the most effective tactics the defendant uses for removing or firing blacks, is to first determine if they have transportation to and from work, since most of these employee rely on public transportation. Next, she then adjust their scheduling knowing full well that public transportation is an unpredictable and often unreliable means of transportation for me and my coworkers. in summary, working under the supervision of **Delores Mejia** has been an unpleasantly stressful experience for myself and other. The egregious nature of the aforementioned working conditions that has affected the lives of people hired by an example Delores Mejia and **Gategourmet** promoted and transferred favorable Asians into other departments, but not blacks.

The behavior of supervision **Delores Mejia** and the operations of **Gategourmet** are in violation of:

**42 USCS §2000e-2 Unlawful employment Practices**

**(a) Employer practices**

It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**(m) Impermissible consideration of race, color, religion, sex, or national origin in employment practices**

Except as otherwise provided in this subchapter, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice.

**(j) Preferential treatment not to be granted on account of existing number or percentage imbalance**

Nothing contained in this subchapter shall be interpreted to require any employer, employment agency, labor organization, or joint labor-management committee subject to this subchapter to grant preferential treatment to any individual or to any group because of the race, color, religion, sex, or national origin of such individual or group on account of an imbalance which may exist with respect to the total number or of persons of any race, color, religion, sex, or national origin employed by any employer percentage loyer, referred or classified for employment by any employment agency or labor organization, admitted to membership or classified by any labor organization, or admitted to, or employed in, any apprenticeship or other training program, in comparison with the total number or percentage of persons of such race, color, religion, sex, or national origin in any community, State, section, or other area, or in the available work force in any community, State, section, or other area.

**(3)** Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of title 28.

## (5). Fifth Cause

**Violation of Title 8 Cal OHSA /3364. (1), (2), (b), (c), (d) and assault**

**Delores Mejia & Ernest Little**

On the morning of February 23, 2015 I **Augustus Brown II** had yet another incident involving **Delores Mejia** and second altercation with **Earnest Little (Operations Storeroom),** and others issues of malice which seems to be both harassment- & a violation of Cal OSAH protocol. At precisely 8:18am on the 23rd of February, I made my way to the storeroom restroom. It's close to my general work area, so I typically use it regularly. But to day when I needed to go, I was literally stopped by employee **Ernest Little,** who placed his hands on me so as to push me away, and deny me access. Then, as if I'd been a "problem", he called over supervisor **Delores Mejia.** Not surprisingly she said that not only could I not use this particular restroom, but that I'd have to walk over **400ft.**- and up **3 flights of stairs**- to find a restroom. Even while trying yet to go around **Ernest** to use the restroom ( my need to go was urgent), I explained to **Delores Mejia & Ernest Little** that my diabetes medication tends to make me have to suddenly "go" often. So this restroom's close proximity to my work area,**(within 200ft),** works better for my needs. But both she**(Delores)** and he**(Ernest)** were insensitive to my situation. And, even after I was finally allowed to use the facilities, **Ernest Little** told me to go to see supervisor **Delores Mejia,** who, had "arranged" to have galley dept. manager **John Errico** to discipline me, then escort me from out of the storeroom area. Then, after explaining to **Brett Appleberg** in his office my diabetes, and my back and the medication's that I take has an effect on my frequenting the restroom, he**(Brett Appleberg)** and supervisor **Delores Mejia** took and de-coded my work badge thus preventing me from using this nearby restroom anymore. Finally they effectively claimed that this particular restroom was now on

lockdown, rather than abide by **Cal OSHA regulation(s) 3363** ( among others), which clearly allows a person with my ailments the right to use readily available facilities.

**OHSA 3363-65 (1)** When there are less than five employees, separate toilet rooms for each sex are not required provided toilet rooms can be locked from the inside and contain at least one water closet. **(Title 24, Part 5, Section 5-910 (a)(1)**

**(2)** Employees engaged in hand-labor operations at agricultural establishments are subject to the sanitation provisions of **Section 3457. (b)** Toilet facilities shall be kept clean, maintained in good working order and be accessible to the employees at all times. Where practicable, toilet facilities should be within 200 feet of locations at which workers are regularly employed and should not be more than one floor-to-floor flight of stairs from working areas. **(Title 24, part 5, section 5-910(a)(1))**

**(c)** All water-carried sewage shall be disposed of by means of either a public sewage system or by a sewage disposal system in conformance with applicable State and local laws, ordinances, and regulations. The sewage disposal method shall not endanger the health of employees.

**(d)** An adequate supply of toilet paper shall be provided for every water closet.

**Assault: 18 U.S. Code § 111** - Assaulting, resisting, or impeding certain officers or employees

(a) **In General.**— Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114

on account of the performance of official duties during such person's term of service, shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

**18 USCS Code § 118;** Any person who knowingly and willfully obstructs, resists, or interferes with a Federal law enforcement agent engaged, within the United States or the special maritime territorial jurisdiction of the United States, in the performance of the protective functions authorized under section 37 of the State Department Basic **Authorities Act of 1956 (22 U.S.C. 2709)** or section 103 of the Diplomatic Security Act (22 **U.S.C. 4802)** shall be fined under this title, imprisoned not more than 1 year, or both.

**USCS Code § 19; (a) In General.—** Whoever knowingly makes restricted personal information about a covered person, or a member of the immediate family of that covered person, publicly available—

(1) with the intent to threaten, intimidate, or incite the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person; or

(2) with the intent and knowledge that the restricted personal information will be used to threaten, intimidate, or facilitate the commission of a crime of violence against that covered person, or a member of the immediate family of that covered person,

shall be fined under this title, imprisoned not more than 5 years, or both.

(b) **Definitions.—** In this section—

(1) the term "restricted personal information" means, with respect to an individual, the Social Security

number, the home address, home phone number, mobile phone number, personal email, or home fax number of, and identifiable to, that individual; (2) the term "covered person" means—

(A) an individual designated in section 1114;

(B) a grand or petit juror, witness, or other officer in or of, any court of the United States, or an officer who may be, or was, serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate;

(C) an informant or witness in a Federal criminal investigation or prosecution; or

(D) a State or local officer or employee whose restricted personal information is made publicly available because of the participation in, or assistance provided to, a Federal criminal investigation by that officer or employee; (3) the term "crime of violence" has the meaning given the term in section 16; and (4) the term "immediate family" has the meaning given the term in section 115 (c)(2).

## (6). Sixth Cause: Malice

**§ 9A.36.080. Malicious harassment** -- Definition and criminal penalty

(1) A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap:

(a) Causes physical injury to the victim or another person;

(b) Causes physical damage to or destruction of the property of the victim or another person; or

(c) Threatens a specific person or group of persons and places that person, or members of the specific group

of persons, in reasonable fear of harm to person or property. The fear must be a fear that a reasonable person would have under all the circumstances. For purposes of this section, a "reasonable person" is a reasonable person who is a member of the victim's race, color, religion, ancestry, national origin, gender, or sexual orientation, or who has the same mental, physical, or sensory handicap as the victim. Words alone do not constitute malicious harassment unless the context or circumstances surrounding the words indicate the words are a threat. Threatening words do not constitute malicious harassment if it is apparent to the victim that the person does not have the ability to carry out the threat.

(2) In any prosecution for malicious harassment, unless evidence exists which explains to the trier of fact's satisfaction that the person did not intend to threaten the victim or victims, the trier of fact may infer that the person intended to threaten a specific victim or group of victims because of the person's perception of the victim's or victims' race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap if the person commits one of the following acts:

**Violations of the Law**

**Negligent representation,37 Am Jur 2d §208;**

Recovery for damages, **28 USCS 1343 (1), (3) &(4) (1)** To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42; **(3)** To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or

immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

b) Defaces property of a victim who is or whom the actor perceives to be of Jewish heritage by defacing the property with a swastika.

This subsection only applies to the creation of a reasonable inference for evidentiary purposes. This subsection does not restrict the state's ability to prosecute a person under subsection (1) of this section when the facts of a particular case do not fall within (a) or (b) of this subsection.

(3) It is not a defense that the accused was mistaken that the victim was a member of a certain race, color, religion, ancestry, national origin, gender, or sexual orientation, or had a mental, physical, or sensory handicap.

(4) Evidence of expressions or associations of the accused may not be introduced as substantive evidence at trial unless the evidence specifically relates to the crime charged. Nothing in this chapter shall affect the rules of evidence governing impeachment of a witness.

(5) Every person who commits another crime during the commission of a crime under this section may be punished and prosecuted for the other crime separately.

(6) "Sexual orientation" for the purposes of this section means heterosexuality, homosexuality, or bisexuality. (7) Malicious harassment is a class C felony.

(8) The penalties provided in this section for malicious harassment do not preclude the victims from seeking

any other remedies otherwise available under law.

(9) Nothing in this section confers or expands any civil rights or protections to any group or class identified under this section, beyond those rights or protections that exist under the federal or state Constitution or the civil laws of the state of Washington. **[1993 c 127 § 2; 1989 c 95 § 1; 1984 c 268 § 1; 1981 c 267 § 1.]**

## Remedy

It is the true and factual belief of the plaintiff that the practices of **Gategourmet** is in error by allowing and not remedying the facts that **Delores Mejia** is a clear and present danger, threat and harassment not only to the plaintiff, but to all of its employees that are unfavorable, to **Delores Mejia** demands. However, **Gategourmet** its CEO, and managers were contacted by the plaintiff and he did truly did verbally complaint to all of them about the harassments, racism, unreasonable, unwanted, unbeneficial, and forcible practices of **Delores Mejia** and those also of **Gategourmet.** That the staffs of **Gategourmet** become angry, evasive and fraudulent when the unreasonable, unfavorable and unlawful demands of **Delores Mejia** are challenged and they attempt to force misdirection upon employee without Union representation. It is solely the belief of the plaintiff that **Gategourmet** are well aware that these practices has in the past and in this present has demonstrated by this action harms and despair of its employees and **Gategourmet** refuses to comply with the rules, regulation of the Union agreement and that of the Federal and State laws. In upholding this temporary hazard and allow its superiors to even set forth hands on violent against employee coming into the common restrooms. Therefore, the plaintiff prays for a fair and impartial hearing by a jury of his own peers of the citizens of the United States. The plaintiff prayer for relief of all restrictions of benefits he would receive and for all privacy and rights restored, with all that is due to him for harms in the amount of

**$515,000.00** in damages, and all payment of past, present and future wages, court cost, attorney fees and all filling fees, court costs, (if) all appellate costs 2. other damages entitled to him by law, and to remove, restrict **Delores Mejia, Ernest Little, Brett Appleberg, CEO/ Herman Anbeek** and the unlawful practices of **Gategourmet** permanently.

**Jurisdiction**

Federal Courts due have the jurisdictions over these unlawful and deceptive acts under **Title 28 USCS §1331** The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. **(a).** Of which requires federal judges to provide a federal court forum to a person for civil actions arising under the Constriction and laws of the United States, which included the Civil Rights Act and Declaratory Judgment Act.**(b). In Idaho Vs. Coeur d' Alene Tribe of Idaho, 117 S. Ct. 2238 L. Ed.2d 438 (1997),** the Court held what was plainly stated in the statues: "Congress has implemented the Constitution's grant of federal question jurisdiction by authorizing federal courts to enforce rights under the Constitution and federal law. Whereas, the (plaintiff), Mr. Brown prays for relief against defendants as follows: Awarding to Mr. Brown three times such damages as he shall prove himself to have sustained and the Court and Jury shall find; Awarding to Mr. Brown any interest on the damages for which judgment shall be entered; Awarding to Mr. Brown his cost and disbursement incurred herein, including all reasonable attorney's fees; Granting equitable relief permanently enjoining defendants from engaging such unlawful conducts in the future and requiring defendant to relieve and not bring harms to Mr. Brown.

Granting to plaintiff such other and future relief as is just, appropriate and available under law.

**Jury Demanded**

Plaintiff hereby demand trial by jury of all issues properly triable thereby.

**Dated: 03-06-2015** **Prepared by:** [signature]

**Augustus M. Brown II**
**609 W. 12th. Street**
**Antioch, California 94509**
**1-925-732-9005 home**
**1-925-301-3180 cell**